UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROGER CHARLES DAY, JR.,

     **Plaintiff,**

                               Case No. 2:20-cv-2978
                               JUDGE EDMUND A. SARGUS, JR.
     **v.**                        Magistrate Judge Kimberly A. Jolson

RICHARD A. MILLER, et al.,

     **Defendants.**


## OPINION AND ORDER

Plaintiff Roger Charles Day, Jr. is an inmate at Terre Haute Federal Correctional Institution. This matter is currently before the Court on his Objection (ECF No. 10) to the Magistrate Judge's Report and Recommendation (ECF No. 3), that recommended that the Court dismiss Plaintiff's claims. For the reasons that follow, the Court **OVERRULES** Plaintiffs' Objection, **ADOPTS** the Report and Recommendation, **DISMISSES** this case, and **FINDS** that an appeal would not be taken in good faith. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants.

**I.**

If a party objects within the allotted time to a report and recommendation, 28 U.S.C. § 636(b)(1) provides that a district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." The Magistrate Judge in the instant action, found

that Plaintiff failed to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).  The Sixth Circuit applies Federal Rule of Civil Procedure 12(b)(6) standards to review whether a complaint states a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii).  *See Hill v. Lappin*, 630 F.3d 468, 470−71 (6th Cir. 2010) (applying Rule 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)).

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of Plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.  See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 678.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

Plaintiff here is proceeding without the assistance of counsel.  This Court construes pro se complaints liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), yet "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## II.

### A.    BACKGROUND

The Fourth Circuit Court of Appeals explained the facts surrounding the crime for which

Plaintiff was convicted.  In *United States v. Day*, 700 F.3d 713, 717 (4th Cir. 2012), the court

stated:

> In late 2004 and early 2005, Day began running a business scheme involving his then-girlfriend, Susan Crotty Neufeld, and his friends, Nathan Carroll and Greg Stewart. Acting at Day's direction, Neufeld, Carroll, and Stewart would set up companies that could bid on parts-supply contracts for the Defense Logistics Agency ("DLA"), the agency within the DOD responsible for acquiring parts for the military services. Using Day's custom-designed software program, the companies would then bid *en masse* on low-dollar value DLA contracts. When one of the newly formed companies won a contract, Day would purchase the necessary parts and have them shipped to Neufeld or Carroll, who would in turn deliver the parts to a packaging company for shipping to the DLA to complete the contract. Day would then share a portion of the profit with the others.
>
> The arrangement between Day and his co-conspirators lasted three years, during which the various companies secured some 987 contracts worth approximately $8,670,380.78. Like all too many get-rich-quick ideas, however, this scheme was too good to be true. The trick was in the parts: rather than delivering parts that complied with the exacting military specifications called for in the various contracts, Day would purchase similar sounding—yet cheaper and nonconforming—items.

*Id*. at 717.

"Early on in the scheme, in May 2005, Day moved to Mexico where he directed Neufeld,

Carroll, and Stewart through emails, phone calls, and internet chats." *Id.*  The scheme unraveled

as Plaintiff's co-conspirators were arrested in 2006 and 2007. *Id.* at 718.  After a year in Mexico

evading United States law enforcement agents, Plaintiff was arrested there in 2008 and

imprisoned while awaiting extradition. *Id.*  He was subsequently indicted in the Eastern Division

of Virginia for wire fraud conspiracy, 18 U.S.C. § 1349; wire fraud, 18 U.S.C. § 1343;

aggravated identity theft, 18 U.S.C. § 1028A; money laundering conspiracy, 18 U.S.C. §

1956(h); smuggling conspiracy, 18 U.S.C. §§ 371, 554; and obstruction of justice, 18 U.S.C. §

1503.  *Id.*  After extradition, he was convicted following a jury trial and sentenced to 1,260

months imprisonment.  *Id.* at 719.

**B.** **Procedural Posture**

Plaintiff has filed a complaint in this Court, alleging a civil Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, class action on behalf of a class of

persons who contracted with the United States Department of Defense ("DOD"), including the

Defense Logistics Agency and various Defense Supply Centers, using the "DD1155 form that

contained the express waiver of the contractor's signature for acceptance of 'the contract' terms

and conditions and the waiver of the contractor's return of a signed DD1155 contract to the

contract administrator, from 2004 to the present."  (ECF No. 1-1, ¶ 3(a)).  Defendants are

"contracting/ordering officers" and contract administrators who allegedly worked for the DOD

during that time period.  (*Id.* ¶¶ 4–10).  They allegedly approved "illegal" contracts in violation

of various federal regulations.  (*Id.* ¶¶ 11–29). In doing so, Plaintiff alleges that Defendants

engaged in a civil RICO conspiracy.

**III.**

The Magistrate Judge concluded that Plaintiff failed to state a claim upon which relief

can be granted.  She explained that, as a pro se litigant, he is not permitted to prosecute a class

action.  (R&R at 4, ECF No. 3) (citing *Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018)

(citations and quotations omitted) ("We have long recognized, under 28 U.S.C. § 1654, that

plaintiffs in federal court may not appear pro se where interests other than their own are at stake.

Indeed, we have consistently interpreted § 1654 as prohibiting pro se litigants from trying to

assert the rights of others.")).   The Magistrate Judge also found that "any individual civil RICO

claim that Plaintiff could possibly bring is barred by the statute of limitations applicable to such claims. Civil RICO claims have a four-year statute of limitations." *Id*. at 4–5 (citing *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 156, (1987)).

In his Objection, Plaintiff contends that the Magistrate Judge erred in both of these findings.

**A.      Statute of Limitations**

Plaintiff contends that the Magistrate Judge failed to recognize that he alleges a "continuing violation of Title 18 U.S.C. § 1961 *et seq*. [RICO]."  (Objection at 1, ECF No. 10.) Specifically, he asserts that "the harmful acts have never ceased" and "continued until today as fully alleged in the instant complaint." *Id*. (citing Compl. ¶¶ 16, 21, 22, 25.)  Plaintiff continues, arguing that "under the continuing tort doctrine, the statute of limitations [begins to run] only when the plaintiff's exposure to the harmful condition ceases, regardless of when the plaintiff discovered the injury and its cause." *Id*. at 2.  He also footnotes that "a continuing tort tolls the statute of limitations until the 'cessation of the wrong.'" *Id*. (citing 54 C.J.S. § 169, referring to it as "Limitations of Actions").  Plaintiff, however, is mistaken.

First, the statute of limitations in a civil RICO claim is not triggered, as Plaintiff contends, when the harmful condition ceases.  Instead, as the Magistrate Judge correctly held, RICO's four-year statute of limitations begins to run when a party knew, or through the exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation. (R&R at 5, ECF No. 3) (citing *Solis v. Emery Fed. Credit Union*, 459 F.Supp.3d 981 (S.D. Ohio May 11, 2020) and *Rotella v. Wood*, 528 U.S. 549, 553 (2000)).  Indeed, as the case law relied upon by the Magistrate Judge clearly indicates, in "a civil RICO claim . . . the statute of limitations incorporates the discovery rule." *Solis*, 459 F. Supp. 3d at 992 (citing *Rotella*, 528

U.S. at 553–55, which held that that the RICO statute of limitations begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation).

Here, Plaintiff himself indicates that he has known of the violation from the time it began, before he was imprisoned over eight years ago.  The fact that the violation allegedly continues today is irrelevant to when the statute of limitations was triggered.  The statute began to run when Plaintiff first knew, or by the exercise of due diligence should have known, of the alleged violation, i.e., over eight years ago.  Consequently, his RICO claim is barred.

Second, the law relied upon by Plaintiff, 54 C.J.S. Limitations of Actions § 169, p. 128, states that "[t]he general rule in tort law is that in the case of a continuing tort and injury whose damages cannot be determined until the cessation of the wrong, the statute of limitations begins to run no earlier than the last date of the wrong.").  As this Court has recognized, 54 C.J.S. Limitations of Actions § 169 refers to "the theory of continuing tort in a negligence claim." *Am. Premier Underwriters Inc. v. Gen. Elec. Co.*, 866 F. Supp. 2d 883, 913 (S.D. Ohio 2012) (reviewing whether courts in Delaware would recognize this theory).  Plaintiff's case, however, is brought under RICO, not a common law tort theory.  And, as stated above, the law is clear that there is a discovery rule applicable to alleged RICO violations, which bars his RICO cause of action.

## B.    Class Representative

In Plaintiff's Objection, he contends that 28 U.S.C § 1654 provides him the ability to act as class counsel.  Plaintiff is, however, mistaken.

The law developed under 28 U.S.C § 1654 unequivocally dictates that "[a] nonlawyer can't handle a case on behalf of anyone except himself." *Zanecki v. Health All. Plan of Detroit*,

576 Fed. Appx. 594, 595 (6th Cir. 2014) (citing *Georgakis v. Ill. State Univ.,* 722 F.3d 1075,

1077 (7th Cir.2013) and 28 U.S.C. § 1654).  Consequently, the Magistrate Judge did not err in so

finding.

## IV.

The Court permitted Plaintiff to proceed *in forma pauperis* in the instant action.  (*See*

ECF No. 3.)  Federal Rule of Appellate Procedure 24(a)(3) provides in relevant part as follows:

> A party who was permitted to proceed *in forma pauperis* in the district-court action . . .
> may proceed on appeal *in forma pauperis* without further authorization unless:
>
> (A)  the district court—before or after the notice of appeal is filed—certifies that the
> appeal is not taken in good faith or finds that the party is not otherwise entitled to
> proceed *in forma pauperis* and states in writing its reasons for the certification or
> finding; or
>
> (B)  a statute provides otherwise.

Fed. R. App. P. 24(a)(3).  Further, consistent with Federal Rule of Appellate Procedure

24(a)(3)(A), § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the

trial court certifies in writing that it is not taken in good faith."

In the case *sub judice*, even if Plaintiff were to qualify for *in forma pauperis* status from a

financial standpoint, Plaintiff's appeal would not be taken in good faith.  The Court reaches this

determination because, as explained herein, Plaintiff's Complaint fails to state a claim upon

which relief could be granted.

## V.

Based on the foregoing *de novo* review, the Court concludes that the Magistrate Judge's

Report and Recommendation is well reasoned, sets forth the proper law, and correctly applies the

law to the facts of this case.  That is, because Plaintiff is not a lawyer he may only represent

himself, not a class.  And, as to his RICO claim, it is barred by the statute of limitations.

Accordingly, the Court **OVERRULES** Plaintiffs' Objection (ECF No. 5), **ADOPTS** the Report and Recommendation (ECF No. 3), **DISMISSES** this case, and FINDS that an appeal would not be taken in good faith.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants.

      **IT IS SO ORDERED.**


<u>**4/22/2021**</u>                           <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                               **EDMUND A. SARGUS, JR.**
                                        **UNITED STATES DISTRICT JUDGE**